**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IMDB.COM INC., a Delaware corporation, | No. 18-15463 |
| *Plaintiff-Appellee*, | D.C. No. 3:16-cv-06535-VC |
| v. | |
| XAVIER BECERRA, | |
| *Defendant*, | |
| and | |
| SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, | |
| *Intervenor-Defendant-Appellant.* | |

2                    IMDB.COM V. SAG-AFTRA

| | |
|---|---|
| IMDB.COM INC., a Delaware corporation,<br><br>*Plaintiff-Appellee*,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as Attorney General of the State of California,<br><br>*Defendant-Appellant*,<br><br>and<br><br>SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS,<br><br>*Intervenor-Defendant.* | No. 18-15469<br><br>D.C. No. 3:16-cv-06535-VC<br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Vince Chhabria, District Judge, Presiding

Argued and Submitted September 9, 2019
Pasadena, California

Filed June 19, 2020

Before:  Johnnie B. Rawlinson, Mark J. Bennett,
and Bridget S. Bade, Circuit Judges.

Opinion by Judge Bade

# SUMMARY*

## Civil Rights

The panel affirmed the district court's grant of summary judgment in favor of plaintiff in an action challenging enacted Assembly Bill 1687, which prohibits a specified category of websites from publishing the ages and dates of birth of entertainment industry professionals.

The panel first determined that Assembly Bill 1687 ("AB 1687") appeared to target a single entity: the Internet Movie Database, IMDb, Inc. IMDb operates a free, publicly available website, IMDb.com, that offers a comprehensive database of information about movies, television shows, and video games. Similar to Wikipedia, anyone with an internet connection and a user account may update and provide information for the site, subject to review by IMDb. IMDb also operates a subscription-based service for industry professionals, known as IMDbPro. AB 1687 requires that a subscription-based service like IMDbPro, upon a subscriber's request, must (1) remove the subscriber's age or date of birth from that subscriber's paid-for profile; and must also (2) remove from public view in an online profile of the subscriber, the subscriber's date of birth and age information on any companion Internet Web sites under its control.

Focusing its analysis on the statute's provision pertaining to companion websites, such as IMDb.com, the panel held that AB 1687 prohibits the publication of specific

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

content by specific speakers.  It was therefore a content-based restriction on speech that was subject to strict scrutiny.  The panel rejected defendants' argument that the statute merely regulated contractual obligations between IMDb and subscribers to IMDbPro.  The panel held that the statute reaches far beyond the terms of any subscriber agreement.  It applies not only to paid-for profiles—like those on IMDbPro—but also to entries on the publicly available, non-subscription site IMDb.com.  It therefore prohibited the publication of information submitted by members of the public with no connection to IMDb.

The panel further rejected the contention that strict scrutiny did not apply because the speech implicated by AB 1687 fell into one of three categories of speech entitled only to reduced protection:  (1) commercial speech; (2) illegal speech; and (3) speech implicating private matters.

The panel held that the content found in profiles on IMDb's public website did not meet the standard for commercial speech because the profiles on IMDb.com do not propose a commercial transaction.  The panel further held that the speech did not facilitate illegal conduct, and finally the panel held that neither this court, nor the Supreme Court, has held that content-based restrictions on public speech touching on private issues escape strict scrutiny.

The panel held that AB 1687 did not survive strict scrutiny.  Although the panel agreed with the district court that reducing incidents of age discrimination is a compelling government interest, the panel held that the statute was neither the least restrictive means to accomplish that goal, nor narrowly tailored.  The panel determined that the State had not explored, or even considered, a less restrictive means to combat age discrimination in the entertainment industry

before resorting to the drastic step of restricting speech. The panel further found that AB 1687 was underinclusive because it failed to reach several potential sources of age information and protected only industry professionals who subscribe to IMDbPro, and who ask for their age information to be removed from the public website, IMDb.com.

The panel held that the district court did not abuse its discretion in denying the parties' discovery requests, stating that it failed to see how any of the proposed requests would affect the panel's conclusion on the merits.

## COUNSEL

Douglas E. Mirell (argued) and Kelly M. Raney, Greenberg Glusker Fields Claman & Machtinger LLP, Los Angeles, California, for Intervenor-Defendant-Appellant.

Amie L. Medley (argued), Deputy Attorney General; Mark R. Beckington, Supervising Deputy Attorney General; Thomas S. Patterson, Senior Assistant Attorney General; Xavier Becerra, Attorney General; Office of the Attorney General, Los Angeles, California; for Defendant-Appellant.

John C. Hueston (argued), Hueston Hennigan LLP, Newport Beach, California; Moez Kaba, Adam Olin, and Jenna G. Williams, Hueston Hennigan LLP, Los Angeles, California; for Plaintiff-Appellee.

Barbara A. Jones and William Alvarado Rivera, AARP Foundation, Washington, D.C., for Amici Curiae AARP, AARP Foundation, Alliance of Retired Americans and Communication Workers of America, and AFL-CIO.

Elizabeth Rosenfeld and Michael R. Odoca, Wohlner Kaplon Cutler Halford & Rosenfeld, Encino, California, for Amicus Curiae Studio Transportation Drivers, Local Union No. 399 of the International Brotherhood of Teamsters.

Mary-Christine Sungaila, Haynes and Boone LLP, Costa Mesa, California; Polly Fohn and Natasha Breaux, Haynes and Boone LLP, Houston, Texas; for Amici Curiae First Amendment Scholars and Reporters Committee for Freedom of the Press.

David Greene, Electronic Frontier Foundation, San Francisco, California, for Amici Curiae Electronic Frontier Foundation, First Amendment Coalition, Media Law Resource Center, Wikimedia Foundation, and Center for Democracy & Technology.

## OPINION

BADE, Circuit Judge:

In 2016, the State of California—at the behest of the Screen Actors Guild ("SAG")—enacted Assembly Bill 1687 ("AB 1687"), which prohibits a specified category of websites from publishing the ages and dates of birth of entertainment industry professionals. The statute appears to target a single entity: IMDb.com Inc. ("IMDb"). IMDb sued the State to prevent future enforcement of the statute, arguing that it violated IMDb's First Amendment speech rights and other constitutional and statutory provisions. The district court agreed and enjoined the State's enforcement of the statute—first on a preliminary basis and then permanently after further briefing by the parties. Both the State and SAG, as an Intervenor, appealed to this court.

On its face, AB 1687 prohibits the publication of specific content, by specific speakers.  Therefore, it is a content-based restriction on speech that is subject to strict scrutiny.  Because the State and SAG fail to demonstrate that AB 1687 survives that standard, we affirm the district court.

## BACKGROUND

True to its long-form name, the Internet Movie Database, IMDb operates a free, publicly available website that offers a comprehensive database of information about movies, television shows, and video games.  Visitors to IMDb.com can peruse movie reviews, trivia, plot summaries, and fictional character biographies.  The site also contains encyclopedic entries on cast and crew members in the industry.  Often, but not always, these biographical entries contain the subject's age or date of birth.  In total, IMDb.com contains more than three million unique pages for titles and more than six million entries for cast and crew.  As of January 2017, it ranked as the 54th most visited website in the world.

Compiling the data found on IMDb.com takes work.  But rather than employ its own in-house army of movie buffs for the job, IMDb relies on a cheaper, more abundant workforce: its users.  Thus, similar to Wikipedia, anyone with an internet connection and a user account may update and provide information for the millions of pages on the site.  IMDb, however, does not take a completely hands-off role.  Instead, it employs a "Database Content Team" tasked with reviewing the community's additions and revisions for accuracy.

In 2002, IMDb launched a subscription-based service for industry professionals, known as IMDbPro, to complement its public facing site.  Subscribers to IMDbPro span the

entertainment industry, including A-List actors, role players, writers, set designers, makeup artists, camera operators, sound editors, and many others. IMDbPro functions more or less as Hollywood's version of LinkedIn. The job-seeking subscribers create a quasi-resumé by uploading headshots, demo reels, prior jobs, and other biographical information. In turn, casting agents and producers, who also pay to subscribe, access these profiles through IMDbPro to cast actors and hire crews for projects.

In 2016, citing concerns about age discrimination in the entertainment industry, SAG sponsored legislation that eventually became AB 1687. SAG called out IMDb specifically for facilitating discriminatory conduct, citing an unsuccessful lawsuit by an aspiring actress against the company.[1] Legislative history accompanying later versions of the bill pointed to a May 21, 2015 article from *The Guardian*, in which an Academy Award-nominated actress alleged that a casting director rejected her for a role because of her age.[2]

The California Legislature passed the measure, the governor signed it into law, and the statute took effect on January 1, 2017. 2016 Cal. Legis. Serv. Ch. 555 (codified at Cal. Civ. Code § 1798.83.5).

---

[1] *See* Second Amended Complaint, *Hoang v. Amazon.com, Inc.*, No. 2:11-cv-01709-MJP (W.D. Wash. Apr. 25, 2012), ECF No. 45.

[2] Ben Child, *Maggie Gyllenhaal: At 37 I Was "Too Old" for Role Opposite 55-Year-Old Man*, The Guardian (May 21, 2015), https://www.theguardian.com/film/2015/may/21/maggie-gyllenhaal-too-old-hollywood.

The statute provides that:

> A commercial online entertainment employment service provider that enters into a contractual agreement to provide employment services to an individual for a subscription payment shall not, upon request by the subscriber, do either of the following: (1) [p]ublish or make public the subscriber's date of birth or age information in an online profile of the subscriber [or] (2) [s]hare the subscriber's date of birth or age information with any Internet Web sites for the purpose of publication.

Cal. Civ. Code § 1798.83.5(b)(1)–(2). This provision requires that a subscription-based service like IMDbPro,[3] upon a subscriber's request, must remove the subscriber's age or date of birth from that subscriber's paid-for profile.

But the statute contains a more controversial provision. If a subscriber asks a provider to remove his or her age or date of birth from a paid-for profile, the provider also must "remove from public view in an online profile of the subscriber the subscriber's date of birth and age information *on any companion Internet Web sites* under its control." *Id.* § 1798.83.5(c) (emphasis added). Thus, if asked to do so, IMDb must remove age information not only from a subscriber-curated profile on IMDbPro, as it has done in the

---

[3] Neither party disputes that IMDb is a "commercial online entertainment employment service provider" that "provides employment services" to "subscribers" through IMDbPro.

past, but also from any separate profile publicly available on IMDb.com.

Before AB 1687 took effect, IMDb filed a complaint under 42 U.S.C § 1983 in the Northern District of California to prevent its enforcement. IMDb alleged that AB 1687 violated both the First Amendment and Commerce Clause of the Constitution, as well as the Communications Decency Act, 47 U.S.C. § 230(f)(2). IMDb later moved for a preliminary injunction to expedite the district court's consideration of the issue. SAG then moved to intervene to defend AB 1687 alongside the State. The district court granted IMDb's motion on First Amendment grounds and entered a preliminary injunction prohibiting enforcement of the statute. The State and SAG declined to exercise their rights to appeal that decision to this court in lieu of proceeding to the ultimate resolution of the matter in the district court.

Although the parties agreed to limit the litigation to IMDb's First Amendment claim, both the State and SAG requested limited discovery before completing summary judgment briefing. The court rejected the attempt but permitted the State and SAG to file a brief "to explain with specificity what discovery they want to conduct," including draft discovery requests. The State and SAG complied and submitted twenty-eight document requests and seven interrogatories. They also proposed conducting a Rule 30(b)(6) deposition of IMDb.

The State and SAG argued that the requests fell into five broad categories meant to show: (1) whether information on IMDB.com facilitates age discrimination, (2) IMDb's intent, (3) actual incidents of age discrimination, (4) whether IMDb uses improper means to gather information, and (5) the relationship between IMDb.com and IMDbPro. The State

and SAG later stated that their requests would address the fundamental issue raised in the district court's preliminary injunction order: that "[t]he government has presented nothing to suggest that AB 1687 would actually combat age discrimination."

The district court held a hearing on the discovery requests, and the State reiterated that it designed the discovery requests to gather evidence to show that AB 1687 was "narrowly tailored to meet a compelling [government] interest." The district court rejected each proposed request in a written order. In that order, the district court noted that the State would need to show that it had "no other reasonable way to combat age discrimination in the entertainment industry." The district court took issue with the requests, describing some as "disturbing" and "an abuse of power" and noting that the State attempted to "[r]estrict speech first and ask questions later." Therefore, the district court concluded that, although discovery might be warranted in some First Amendment cases, the State failed to identify any "factual question that would meaningfully affect the analysis of the constitutionality of the statute on its face."

The district court later granted IMDb's motion for summary judgment on its First Amendment facial challenge to AB 1687. First, the district court rejected the State's and SAG's attempts to deflect any level of scrutiny under the First Amendment. Thus, the court concluded that AB 1687 could not "properly be considered a regulation of voluntary commercial contracts" because it "neither regulates any existing agreement between subscribers and IMDbPro nor imposes an after-the-fact requirement on IMDb not to disclose information provided by subscribers to IMDbPro." The district court further dismissed the contention that the statute was either a law of general applicability, a law that

regulated commercial speech, or a law that regulated speech that "facilitates" discrimination. The court therefore proceeded to a strict scrutiny analysis. Although the district court found that combating age discrimination in the entertainment industry was a compelling government interest, it determined that the State failed to introduce any evidence to show that AB 1687 was "actually necessary." Specifically, the court noted that "the record provides no evidence that California explored less-speech-restrictive alternatives, like amendment, clarification, or enhanced enforcement of antidiscrimination laws, before imposing this restriction on IMDb's speech." Moreover, it found that the law was not narrowly tailored because the law was both underinclusive and overinclusive. Accordingly, the district court found the statute in conflict with the First Amendment. Both the State and SAG appealed the district court's summary judgment order, as well as its order denying discovery, to this court.

We review the district court's discovery rulings for an abuse of discretion, *see Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005), and its grant of summary judgment de novo, *Asarco LLC v. Atl. Richfield Co.*, 866 F.3d 1108, 1118 (9th Cir. 2017).

## DISCUSSION

We first address a fundamental disagreement between the parties: which portion of the statute should be the focus of our analysis. The statute imposes two separate but closely related prohibitions.

First, it forbids the publication of age information (upon request) on paid-for subscriber profiles hosted by a "commercial online entertainment employment service provider." *See* Cal. Civ. Code § 1798.83.5(b)(1)–(2). The

State and SAG largely focus on this portion of the statue, which restricts IMDbPro.  But the parties do not dispute that IMDb already affords its subscribers the option to remove their ages from their IMDbPro profiles (but not from any companion profile on the public site) and that it has done so since 2010.  There has been no suggestion that IMDb would change this policy in the absence of AB 1687.

Second, the statute prohibits a provider from publishing age information on any public "companion" website, such as IMDb.com, without regard to the source of the information. IMDb contests this provision.  Indeed, this provision was the focus of IMDb's challenge and request for injunctive relief in the district court, and it remains the focus of the parties' dispute on appeal.  Because this aspect of the statute presents the central issue on appeal, we focus our inquiry here.

## I.  AB 1687 Imposes a Content-Based Restriction on Speech

Next, we must determine whether AB 1687 implements a content-based restriction on speech subject to First Amendment scrutiny, or whether it is simply a law of general applicability immune from the strictures of the First Amendment as the State and SAG contend.  We conclude that it is the former.

The First Amendment, as incorporated and applied to the states by the Fourteenth Amendment, curtails a state's ability to implement "content-based" restrictions on speech.  *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015).  A speech-restricting statute is "content-based" if it, "by its very terms, singles out particular content for differential treatment." *Berger v. City of Seattle*, 569 F.3d 1029, 1051 (9th Cir. 2009) (en banc).  Such restrictions are disfavored and "presumptively invalid."  *See R.A.V. v. City of St. Paul*,

505 U.S. 377, 382 (1992). Thus, the government bears the burden of demonstrating the constitutionality of a speech-restricting statute. *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000); *see also Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571–72 (2011).

In contrast, a law of general applicability does not "offend the First Amendment simply because [its] enforcement" may have an "incidental effect[]" on speech. *See Cohen v. Cowles Media Co.*, 501 U.S. 663, 669 (1991) (concluding that the First Amendment does not bar a cause of action for promissory estoppel). Private parties may freely bargain with each other to restrict their own speech, and those agreements may be enforced, without implicating the First Amendment. *See id.* at 671. This principle is limited; we will not characterize a "state-created" restriction on speech as a "simple bargain" if it "existed independently of, and prior to, any interaction between" the speaker and another. *Lind v. Grimmer*, 30 F.3d 1115, 1118–19 (9th Cir. 1994). Furthermore, a law's practical effects are not merely "incidental" when it imposes restrictions "based on the content of speech and the identity of the speaker." *IMS Health*, 564 U.S. at 567.

On its face, AB 1687 restricts speech because of its content. *See Reed*, 135 S. Ct. at 2227. It prohibits the dissemination of one type of speech: "date of birth or age information." Cal. Civ. Code § 1798.83.5(b). And, perhaps more troubling, it restricts only a single category of speakers. *Id.* § 1798.83.5(d)(1). Thus, AB 1687 "impose[s] direct and significant restrictions" on a category of speech. *See Lind*, 30 F.3d at 1118. It does not apply generally. The statute affects IMDb's speech in a manner that is far more than "incidental" and therefore it must withstand First Amendment scrutiny. *See IMS Health*, 564 U.S. at 567.

We are unpersuaded by the State's and SAG's argument, relying on *Cohen*, that the statute merely regulates contractual obligations between IMDb and subscribers to IMDbPro. AB 1687 does not simply enforce a bargain between IMDb and its subscribers. IMDb contracts with its subscribers to allow them to create profiles on IMDbPro that are viewed by casting directors and agents. Under these agreements, IMDb permits IMDbPro subscribers to control the dissemination of their own age-related information on their own paid-for profiles. But the statute reaches far beyond the terms of any subscriber agreement. It applies not only to paid-for profiles—like those on IMDbPro—but also to entries on the publicly available, non-subscription site IMDb.com, regardless of agreement between IMDb and its subscribers. *See* Cal. Civ. Code § 1798.83.5(c). The statute does not restrict only information misappropriated through the parties' contractual relationship; it also prohibits the publication of information submitted by members of the public with no connection to IMDb. These restrictions apply regardless of whether an IMDb public profile existed independent of, or prior to, any contractual agreement between IMDb and an IMDbPro subscriber.

For these reasons, *Cohen* does not support the State's and SAG's position. Instead, *Cohen* itself calls into question the propriety of state regulations that "define[] the content of publications that would trigger liability." 501 U.S. at 670. Here, IMDb and its subscribers have not "determine[d] the scope of their legal obligations." *See id* at 671. Through AB 1687, the State usurped that determination. Moreover, the enactment of the statute belies the State's argument that AB 1687 merely requires IMDb to keep its promises. In its absence, IMDb would owe no such duty to its subscribers. Therefore, the statute is subject to analysis under the First Amendment.

## II.  Reduced Protection Does Not Apply to the Speech AB 1687 Restricts

In the majority of cases, we apply the most exacting form of review—strict scrutiny—to determine the validity of a content-based restriction on speech.  *See, e.g.*, *Reed*, 135 S. Ct. at 2227; *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1204 (9th Cir. 2018).  But this is not an absolute rule and some categories of speech receive reduced protection.  *See United States v. Swisher*, 811 F.3d 299, 313 (9th Cir. 2016) (en banc) ("Even if a challenged restriction is content-based, it is not necessarily subject to strict scrutiny.").

For example, courts permit content-based restrictions on select categories of speech "which are 'of such slight social value . . . that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'"  *R.A.V.*, 505 U.S. at 383 (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942)) (listing categories of speech traditionally entitled to reduced protection); *see also Lind*, 30 F.3d at 1118 ("[C]ategories, such as fighting words and obscenity . . . are undeserving of full First Amendment protection.").  The courts similarly afford reduced protection to commercial speech.  *See, e.g.*, *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 820–21 (9th Cir. 2013) (applying reduced level of scrutiny to content-based regulation of commercial speech).

Nevertheless, state legislatures do not have "freewheeling authority to declare new categories of speech outside the scope of the First Amendment."  *See United States v. Stevens*, 559 U.S. 460, 472 (2010).  Thus, "without persuasive evidence that a novel restriction on content is part of a long (if heretofore unrecognized) tradition of proscription, a legislature may not revise the 'judgment [of]

the American people,' embodied in the First Amendment, 'that the benefits of its restrictions on the Government outweigh the costs.'" *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 792 (2011) (alteration in original) (quoting *Stevens*, 559 U.S. at 470)).

The State and SAG each argue that the speech implicated by AB 1687 falls into one of three categories of speech entitled only to reduced protection: (1) commercial speech; (2) illegal speech; and (3) speech implicating private matters. We disagree.

## A. Commercial Speech

First, the content found in profiles on IMDb's public website does not meet the standard for commercial speech. Commercial speech "does no more than propose a commercial transaction." *See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976) (internal quotation and citation omitted). "Where the facts present a close question, 'strong support' that the speech should be characterized as commercial speech is found where the speech is an advertisement, the speech refers to a particular product, and the speaker has an economic motivation." *Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011) (citing *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66–67 (1983)). However, the speaker's "economic motivation" is "insufficient by itself" to render speech commercial. *Bolger*, 463 U.S. at 67; *see also Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 959 (9th Cir. 2012) (declining to conclude that speech was commercial where it failed to satisfy "two of the three Bolger factors").

The facts here do not present a close question; public profiles on IMDb.com do not "propose a commercial

transaction." *Va. State Bd. of Pharmacy*, 425 U.S. at 762. These free, publicly available profiles are found in an "online database of information" and are surrounded by content that "includes information on cast, production crew, fictional characters, biographies, plot summaries, trivia and reviews." The content is encyclopedic, not transactional. Similarly, although AB 1687's restrictions apply to profiles hosted by those providing employment services, those restrictions also extend to those profiles on companion sites where content is uploaded by members of the public. Cal. Civ. Code § 1798.83.5(c). Such profiles do not "propose a commercial transaction." *Va. State Bd. of Pharmacy*, 425 U.S. at 762.

Because IMDb's public profiles do not "propose a commercial transaction," we need not reach the *Bolger* factors. *See Hunt*, 638 F.3d at 715 (concluding that the *Bolger* factors are relevant if the facts present a "close question"). But even if the question were close, nothing in the record indicates that IMDb.com profiles either (1) are an advertisement or (2) refer to a particular product. *See id.* Thus, even assuming IMDb has a financial interest in its public profiles, these profiles are not commercial speech. *See Dex Media W., Inc.*, 696 F.3d at 960 (noting that "economic motive in itself is insufficient to characterize a publication as commercial").[4]

---

[4] We similarly reject the State's argument that IMDb public profiles qualify as "commercial speech" because AB 1687 "extends the contractual obligation of confidentiality to other websites." This argument merely repackages the State's earlier argument that the First Amendment does not apply at all.

### B.  Speech that Facilitates Illegal Conduct

Second, we reject SAG's reliance on *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*, 413 U.S. 376 (1973), to argue a lower level of scrutiny applies because AB 1687 "regulates activity that facilitates illegal conduct."

In *Pittsburgh Press*, the Supreme Court addressed a challenge to a city ordinance that prohibited discrimination on various bases, including sex.  413 U.S. at 378.  To support that prohibition, the ordinance forbade the dissemination of advertisements that "indicate[d] any discrimination because of sex."  *Id.* (internal quotations and alterations omitted). The National Organization of Women filed a complaint with the Pittsburgh Commission on Human Relations alleging the Pittsburgh Press violated these provisions because it published advertisements for job openings with "the captions 'Jobs–Male Interest,' 'Jobs–Female Interest,' and 'Male–Female.'"  *Id.* at 379, 392–93.  The Court upheld the ordinance as consistent with the First Amendment, noting that the newspaper's "First Amendment interest" was "altogether absent when the commercial activity itself"— *i.e.*, the indication of a preference on the basis of sex—"is illegal."  *Id.* at 389.

That rationale does not apply here.  *Pittsburgh Press* implicates only those instances when the state restricts speech that itself proposes an illegal transaction.  *See, e.g.*, *United States v. Williams*, 553 U.S. 285, 297 (2008) ("Offers to engage in illegal transactions are categorically excluded from First Amendment protection." (citing *Pittsburgh Press Co.*, 413 U.S. at 388)); *Valle Del Sol Inc.*, 709 F.3d at 822 ("Nothing in *Pittsburgh Press* . . . suggests that we should expand our inquiry beyond whether the affected speech proposes a lawful transaction . . . .").  But we find nothing

illegal about truthful, fact-based publication of an individual's age and birthdate when that information was lawfully obtained.

If accepted, SAG's interpretation of *Pittsburgh Press* would require this court to permit the restriction not only of speech that proposes an illegal activity but also facially inoffensive speech that a third-party might use to facilitate its own illegal conduct. But as the Supreme Court has noted, "it would be quite remarkable to hold that speech by a law-abiding possessor of information can be suppressed in order to deter conduct by a non-law-abiding third party." *Bartnicki v. Vopper*, 532 U.S. 514, 529–30 (2001); *see also IMS Health*, 564 U.S. at 577 ("But the fear that people would make bad decisions if given truthful information cannot justify content-based burdens on speech." (internal quotation and citation omitted)).[5] Rather than restrict truthful speech, the typical "method of deterring unlawful conduct is to impose an appropriate punishment on the person who engages in it." *Bartnicki*, 532 U.S. at 529. Thus, nothing in the First Amendment nor our precedent permits the drastic step that SAG advocates.

---

[5] We similarly reject SAG's reliance on *Barrick Realty, Inc. v. City of Gary*, 491 F.2d 161 (7th Cir. 1974), which held that a regulation prohibiting the display of "for sale" signs did not violate the First Amendment. *Id.* at 164. *Barrick Realty*, however, predates the Supreme Court's modern commercial speech jurisprudence. *See Linmark Assocs., Inc. v. Twp. of Willingboro*, 431 U.S. 85, 95 n.9 (1977) ("We express no view as to whether *Barrick Realty* can survive *Bigelow* [*v. Virginia*, 421 U.S. 809 (1975)] and *Virginia Pharmacy Bd.*"). And, in *Linmark Associates*, the Court struck down on First Amendment grounds a regulation identical to that at issue in *Barrick Realty*. 431 U.S. at 96–97.

### C. Speech Implicating Privacy Concerns

Finally, both the State and SAG argue that a less exacting standard of review applies to AB 1687 because "it restricts only speech of a purely private concern." However, neither this court, nor the Supreme Court, has held that content-based restrictions on public speech touching on private issues escape strict scrutiny. We decline to create such a broad category of speech entitled only to reduced protection and allow expanded restrictions on content-based speech.

To be sure, courts have long recognized that the First Amendment and an individual's right to privacy present competing concerns. *See, e.g.*, *The Florida Star v. B.J.F.*, 491 U.S. 524, 530–31 (1989) (collecting cases). Nevertheless, we will not cordon off new categories of speech for reduced protection unless it "is part of a long (if heretofore unrecognized) tradition of proscription." *Entm't Merchs. Ass'n*, 564 U.S. at 792 (citing *Stevens*, 559 U.S. at 470). Neither the State nor SAG identify any compelling evidence that content-based restrictions on lawfully obtained age information have any historical analog. Thus, we will not exclude information about a person's age "from the normal prohibition on content-based restrictions." *See Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2372 (2018) (quoting *United States v. Alvarez*, 567 U.S. 709, 722 (2012) (plurality opinion)).

The authority presented by the State and SAG does nothing to change this conclusion. Although many state and federal statutes "regulate data collection and disclosure" without implicating the First Amendment, such statutes regulate the misuse of information by entities that obtain that information from individuals through some exchange. *See, e.g.*, 18 U.S.C. § 2710 (prohibiting disclosure of personally identifiable information obtained in the course of video tape

rental); 47 U.S.C. § 551 (cable subscribers); 20 U.S.C. § 1232g (educational agencies); 15 U.S.C. §§ 6501–6506 (websites). Such restrictions differ significantly from AB 1687, which by its terms prohibits the publication of information without regard to how it was obtained.

Similarly, the plethora of Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, cases cited by the State and SAG do not implicate prohibitions constrained by the First Amendment. Rather, FOIA cases typically ask whether, as a matter of statutory interpretation, the government must affirmatively disclose personally identifying information. *See, e.g.*, *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487 (1994). This case poses a different question entirely: whether a state can prohibit the dissemination of lawfully obtained information, albeit that of a private character. *Cf. Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 934 (D.C. Cir. 2003) ("Indeed, in contrast to FOIA's statutory presumption of disclosure, the First Amendment does not 'mandate[] a right of access to government information or sources of information within the government's control.'" (alteration in original) (quoting *Houchins v. KQED*, 438 U.S. 1, 15 (1978) (plurality opinion))).

The case that may provide the best support for the State's contention is *Trans Union Corp. v. FTC*, 267 F.3d 1138 (D.C. Cir. 2001), *denying reh'g from*, 245 F.3d 809. But *Trans Union Corp.* is distinguishable. There the D.C. Circuit rejected a First Amendment challenge against provisions of the Fair Credit Reporting Act limiting the ability of credit reporting agencies to sell consumers' private personal information. *See id.* at 1143. In upholding the statute, the court applied intermediate scrutiny. *Id.* at 1140. But although the court acknowledged the consumers'

privacy interests in the data, its analysis focused on the commercial nature of the speech at issue.  *See id.* at 1141. Moreover, the "speech" at issue—the sale of data—was itself an inherently private exchange between private parties. Here, in contrast, IMDb posts the information on its website free of charge for the public to review.  This fact alone imparts an inherently public character to the speech at issue. *See Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (stating that the "'content, form, and context' of the speech" determine whether it is of public concern (quoting *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 761 (1985))).

We set a high bar for cordoning off new types of speech for diminished protection.  Thus, although the courts have recognized some conflict between the First Amendment and privacy interests, we lack the "persuasive evidence" in this case that would permit a content-based prohibition of age information without subjecting that restriction to strict scrutiny.  *See Nat'l Inst. of Family & Life Advocates*, 138 S. Ct. at 2372 (internal quotation and citation omitted).

## III.    AB 1687 Does Not Survive Strict Scrutiny

Because AB 1687 does not regulate commercial speech, or any other form of speech entitled to reduced scrutiny only, we apply strict scrutiny to determine its validity.  This "is a demanding standard," *Entm't Merchs. Ass'n*, 564 U.S. at 799, and "[i]t is rare that a regulation restricting speech because of its content will ever be permissible," *Playboy Entm't Grp., Inc.*, 529 U.S. at 818.  Accordingly, the state must show that the statute "furthers a compelling governmental interest and is narrowly tailored to that end." *Reed*, 135 S. Ct. at 2231.  "If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative."  *Playboy Entm't Grp., Inc.*, 529 U.S. at 813.  Similarly, a statute is not narrowly tailored if it is

either underinclusive or overinclusive in scope. *Animal Legal Def. Fund*, 878 F.3d at 1204.

We agree with the district court that reducing incidents of age discrimination is a compelling government interest. Thus, we must determine only whether AB 1687 is the least restrictive means to accomplish that goal and narrowly tailored. We conclude that it fails on both points.

## A. Least Restrictive Means

Even if a state intends to advance a compelling government interest, we will not permit speech-restrictive measures when the state may remedy the problem by implementing or enforcing laws that do not infringe on speech. *See Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 637 (1980); *see also Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1178 (9th Cir. 2018) ("California could also enforce its existing laws . . . ."). "[B]ecause restricting speech should be the government's tool of last resort, the availability of obvious less-restrictive alternatives renders a speech restriction overinclusive." *Valle Del Sol Inc.*, 709 F.3d at 826 (citation omitted). Here, the State has not explored, or even considered, a less restrictive means to combat age discrimination in the entertainment industry before resorting to the drastic step of restricting speech.

Neither the State nor SAG dispute that speech-neutral remedies exist. *See, e.g.*, California Fair Employment & Housing Act, Cal. Civ. Code §§ 12900–12996. Yet, they offer little argument to show why these laws are insufficient. Although the State points to evidence in AB 1687's legislative history, this history is murky at best. This evidence consists largely of a single, anecdotal account of discrimination from one actress in an article in *The*

*Guardian*. But the article does not address whether the actress attempted to avail herself of any other remedy or why any other remedy was insufficient. In sum, the article offers nothing to show that less-restrictive means are insufficient to combat age discrimination.[6]

The legislative history similarly cites statistics from the U.S. Equal Employment Opportunity Commission ("EEOC"). These statistics purport to show that age discrimination claims rose thirty-eight percent from 2006 to 2013. But the EEOC statistics are generalized and do not speak to a specific industry. Thus, the State cannot show that the entertainment industry experiences higher rates of age discrimination than industries that are not affected by age information on IMDb's websites. Moreover, it does not follow that a rising rate of such claims indicates that the current law, or another speech-neutral law, would be insufficient to address this problem.

Thus, the State cannot meet its burden because it fails to point to *any* evidence demonstrating that less restrictive measures would not be effective.[7] *See Valle Del Sol Inc.*,

---

[6] The article further cites statistical evidence from both an ACLU initiative to fight industry discrimination and a San Diego State University study detailing discrimination rates in the entertainment industry. But both studies appear concerned with *sex* discrimination rather than *age* discrimination.

[7] SAG cites a statement by Los Angeles County Supervisor Sheila Kuehl to support its claim that less restrictive measures would not be effective. But this evidence was not before the district court. Instead, the statement was submitted to this court *for the first time* during the pendency of the appeal. SAG offers no justification for this court to now consider it as evidence, and we decline to do so. *See United States v. Elias*, 921 F.2d 870, 874 (9th Cir. 1990) ("Documents or facts not presented to the district court are not part of the record on appeal.").

709 F.3d at 827 ("Nothing in the record shows that Arizona could not effectively pursue its interest in traffic safety by enforcing or enacting similar kinds of speech-neutral traffic safety regulations."). Because the State "has various other laws at its disposal that would allow it to achieve its stated interests while burdening little or no speech," it fails to show that the law is the least restrictive means to protect its compelling interest. *See Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 949 (9th Cir. 2011) (en banc). That failure alone dooms AB 1687.

## B. Narrowly Tailored

Similarly, a state fails to narrowly tailor a speech-restrictive law where it eliminates one form of speech "while at the same time allowing unlimited numbers of other types . . . that create the same problem." *Reed*, 135 S. Ct. at 2231. On its face, AB 1687 restricts only websites like IMDb.com while leaving unrestricted every other avenue through which age information might be disseminated. This presents serious concerns here because AB 1687 appears designed to reach *only* IMDb. *Cf. Entm't Merchs. Ass'n*, 564 U.S. at 802 ("Underinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring *a particular speaker* or viewpoint." (emphasis added)).

In defense of the statute, the State argues that the limitation is justified because IMDb is the principal source of the age information available to casting directors. But we have never conditioned our strict scrutiny analysis on whether others outside the scope of the statute are currently engaging in the same speech. *Cf. The Florida Star*, 491 U.S. at 540 (noting that a statute was underinclusive because it restricted newspapers from disseminating information but not a hypothetical individual from maliciously spreading

that same information). Similarly, it is irrelevant to our analysis that other mediums may contain age information on a more circumspect basis. "A ban on disclosures effected by 'instrument[s] of mass communication' simply cannot be defended on the ground that partial prohibitions may effect partial relief." *Id.* (alteration in original) (citation omitted). Because AB 1687 leaves open the possibility that others may disseminate age information unfettered, we cannot conclude that its "selective ban . . . satisfactorily accomplishes its stated purpose." *Id.* at 541; *see also Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 104–05 (1979) (finding statute underinclusive when it prohibits publication of information in only one medium).

Furthermore, the statute is underinclusive because it limits its restrictions to those who both (1) subscribe to IMDbPro and (2) request that IMDb remove his or her information from its public website. *See* Cal. Civ. Code § 1798.83.5(c). Although the State and SAG describe this feature as one that demonstrates the statute's narrow tailoring, this limitation calls into question the State's true motives in enacting the statute. And the State does not extend the protection to everyone in the entertainment industry despite contending that age discrimination warrants the serious step of infringing on First Amendment rights; instead, it extends this protection only to those who pay to subscribe to IMDbPro, and who ask for their age information to be removed from IMDb.com. The State might be able to offer some justification for this feature, but it has not done so here, buttressing the conclusion that the law is woefully underinclusive.

Accordingly, AB 1687 is underinclusive because it fails to reach several potential sources of age information and protects only industry professionals who both subscribe to

such service and who opt-in. This malady means that the statute is not narrowly tailored, and thus, is unconstitutional.

## IV. The District Court Did Not Abuse its Discretion in Denying Discovery

That leaves one final issue for us to resolve. In the typical case, a district court permits each party to gather any relevant, non-privileged information in the possession of any opposing party or third party essential to proving its position. Here, however, the district court rejected the State's and SAG's attempts to do so. Each argues that this was an abuse of discretion. We disagree.

A district court abuses its discretion with respect to discovery orders only "if the movant diligently pursued its *previous* discovery opportunities, and if the movant can show how allowing *additional* discovery would have precluded summary judgment." *Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 844 (9th Cir. 1994). We do not doubt that the State and SAG diligently pursued discovery here. But we fail to see how any of the proposed discovery requests would affect our conclusion on the merits.

SAG contends that additional discovery would have been used to establish the following:

> (1) the severity and pervasiveness of age discrimination in the entertainment industry; (2) the role of IMDb.com in facilitating age discrimination; and (3) the extent to which AB 1687 protects professionals in the entertainment industry, including professionals who are not famous performers whose ages or birthdates may be the subject of legitimate discussion.

Similarly, the State asserts it would have used discovery to identify information that would refute the district court's conclusions:  (1) that "AB 1687 bans only one kind of speaker from disseminating age-related information, leaving all other sources . . . untouched"; and (2) "that defendants have not shown that partially eliminating one source of age-related information will appreciably diminish the amount of age-related discrimination occurring in the entertainment industry."  However, no information discovered within these categories could unsettle two of our principal conclusions: (1) that AB 1687 is a content-based restriction of speech subject to strict scrutiny and (2) that the State fails to show that AB 1687 is the least restrictive means to accomplish its goal.

At bottom, the State's and SAG's discovery requests reflect a fundamental misunderstanding about the State's burden in justifying restrictions on speech.  Here, it does not matter that AB 1687 would accomplish what it sets out to do.  *See Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004) ("[T]he test does not begin with the status quo of existing regulations, then ask whether the challenged restriction has some additional ability to achieve [the state's] legitimate interest.  Any restriction on speech could be justified under that analysis.").   An unconstitutional statute that could achieve positive societal results is nonetheless unconstitutional.  *Cf. Reed*, 135 S. Ct. at 2229 ("Innocent motives do not eliminate the danger of censorship presented by a facially content-based statute, as future government officials may one day wield such statutes to suppress disfavored speech.").  We therefore affirm the district court's discovery rulings.

## CONCLUSION

Unlawful age discrimination has no place in the entertainment industry, or any other industry. But not all statutory means of ending such discrimination are constitutional. Here, we address content-based restrictions on speech and hold that AB 1687 is facially unconstitutional because it does not survive First Amendment scrutiny.[8] We affirm the district court's grant of summary judgment.

**AFFIRMED.**

---

[8] Although our analysis focuses on the portions of the statute restricting publication on "companion" websites, neither the State nor SAG raised any argument in their briefs or at oral argument that any portion of the statute is severable. Thus, we deem the argument waived and determine that the statute is unconstitutional as a whole. *See Comite de Jornaleros de Redondo Beach*, 657 F.3d at 951 n.10.